**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| **KARIN WOLF, Individually and on Behalf of D.C. and G.C.** | : | |
| | : | |
| | : | **Civil Action No. 14-5985** |
| *Plaintiffs,* | : | |
| | : | **OPINION** |
| | : | |
| **v.** | : | **May 20, 2015** |
| | : | |
| **GERALD C. ESCALA, et al.,** | : | |
| | : | |
| *Defendants.* | : | |

_____ :

**ARLEO**, U̲NITED S̲TATES D̲ISTRICT J̲UDGE.

Before this Court are motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by the following defendants: (1) Peter Van Aulen, Esq. [Dkt. No. 8]; (2) Good Shepherd Lutheran Church, Roger W. Spencer, and Janet Tenore (the "Good Shepherd Defendants") [Dkt. No. 14]; (3) the Advisory Committee on Judicial Conduct (the "ACJC"), the Appellate Division of the Superior Court of New Jersey (the "Appellate Division"), the Bergen County Family Court of the Superior Court of New Jersey (the "Bergen County Family Court"), the Office of Court Administration, Judge Victor Ashrafi, Judge Harry G. Carroll, Judge William R. DeLorenzo, Judge Peter Doyne, Judge Gerald C. Escala, Judge John C. Kennedy, Judge Ellen L. Koblitz, Judge Bonnie J. Mizdol, Judge William E. Nugent, Judge Jerome M. St. John, Judge Joseph L. Yannotti, Chief Justice Stuart Rabner, Kathy Katona, Esq., and Diana Moskal (collectively, the "Judiciary Defendants") [Dkt. No. 19]; (4) the Office of the County Counsel (the "OCC") [Dkt. No. 20]; (5) Lisa Estrin [Dkt. No. 21]; (6) Luciana Coutinho, Marleni Coutinho,

Plinio Coutinho (collectively, the "Coutinhos"), and Edward J. Crane [Dkt. No. 22]; (7) Dionos Burgos, Sandra Cruz, the Division of Youth and Family Services ("DYFS," now known as "Child Protection and Permanency"), Erika Frank, Debbie Gomez, Tara Horne, Ivan Nina, and Patrick Yan (collectively, the "DYFS Defendants") [Dkt. No. 31]; and (8) Judith Brown Greif ("Dr. Greif") [Dkt. No. 32].[1]  Pro se Plaintiff Karin Wolf opposes these motions.  No oral argument was heard pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  Upon consideration of the parties' submissions in connection with this motion, and for the reasons set forth herein, all motions are **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action on behalf of herself and her two children, D.C. and G.C. (collectively, the "Children"), on September 24, 2014.  Dkt. No. 1, Compl.  Although Plaintiff's 120-page Complaint is somewhat difficult to decipher, this action apparently arises out of Plaintiff's 2007 divorce from her husband, Edward Crane, and ensuing child custody proceedings that ended with the Bergen County Family Court awarding legal and physical custody of the Children to Mr. Crane on August 30, 2013.  See id. ¶¶ 86-87.  In this lawsuit, Plaintiff names as defendants essentially any person or entity with any conceivable connection to the state court custody proceedings.  See id. ¶¶ 30-75.  The custody proceedings are therefore at the heart of the Complaint.

### A.  Custody Proceedings

---

[1] Dr. Greif initially answered the Complaint on November 18, 2014.  See Dkt. No. 18.  Thus, insofar as Dr. Greif moves to dismiss for failure to state a claim, the Court will treat the motion as one for judgment on the pleadings pursuant to Rules 12(c) and 12(h)(2).   This distinction is immaterial, since the standard of review is the same for motions pursuant to Rules 12(b)(6) and 12(c).  See Revell v. Port Auth. of N.Y. & N.J., 498 F.3d 128, 134 (3d Cir. 2010).

Plaintiff and Mr. Crane were married in 2000 and have two children together.  Id. ¶¶ 35, 86.  Shortly after marrying, Plaintiff claims that Mr. Crane subjected her to all manner of abuse that ultimately led Plaintiff to file for divorce for the first time in 2005.  See id. ¶¶ 94-98.  Rather than go through with the divorce, however, Plaintiff agreed to enter marriage counseling, which lasted for one-and-a-half years.  Id. ¶ 98.  Plaintiff alleges that she ultimately left the marital home with the Children on September 29, 2006, "due to domestic violence."  Id. ¶ 86.  On December 1, 2006, Plaintiff was named the custodial parent at a pendente lite hearing.  Id.  On January 17, 2007, Plaintiff and Mr. Crane entered into a consent order in which they agreed to joint legal custody, with Plaintiff remaining as the custodial parent.  Id.  A final judgment of divorce was thereafter entered on May 22, 2007.  Id. ¶ 86.  Plaintiff claims that following their separation and divorce and continuing through the present, Mr. Crane "harassed" and abused Plaintiff and the Children.  Id. ¶ 87, 101; see also id. ¶¶ 102-07.  As a result, Plaintiff alleges that she "moved herself and the Children to Florham Park to put distance between them and [Mr. Crane]."  Id.  ¶ 108.

Significant custody issues first arose in January 2010, when Mr. Crane filed suit (through his attorney, Defendant Peter Van Aulen, Esq.) against Plaintiff alleging, inter alia, parental alienation.  Id. ¶ 109.  Plaintiff claims that Mr. Crane's motion papers contained false statements and that he manufactured fraudulent evidence.  Id.  The subsequent proceedings resulted in the entry of another consent order, which included an agreement to use a "parenting coordinator."  Id. ¶ 110.  Plaintiff then began a new job on November 1, 2010, in Manhattan, which apparently led to a dispute regarding Mr. Crane's visitation rights with the Children.  Id. ¶ 112.  Plaintiff also states that she moved to Staten Island, New York, around this time.  Id. ¶ 114.

Because Plaintiff moved out of New Jersey, Mr. Crane filed an order to show cause on February 1, 2011.  Id. ¶ 115.  In response to Mr. Crane's filing, Plaintiff cross-moved for various forms of relief, including:

> [F]or denial of [Mr. Crane's] motion in entirety, [Mr. Crane] to be held in contempt for breach of contract, child support, sole legal custody and anger management because [Mr. Crane] was harassing [Plaintiff], psychological evaluation of [Mr. Crane], contempt for obstructing use of parenting coordinator, relief from legal abuse, [Mr. Crane] to be deemed vexatious litigant, punitive damages, tax refunds, unreimbursed medical expenses, etc.

Id. ¶ 135.  Defendant Judge William R. DeLorenzo[2] of the Bergen County Family Court issued an order on March 28, 2011, denying Plaintiff's application in its entirety.  Id. ¶¶ 37, 136.

In or about February or March of 2012, Plaintiff hired Defendant Roger Radol, Esq., as her attorney in the custody proceedings.  Id. ¶ 139.  In the summer of 2012, Plaintiff terminated Mr. Radol, allegedly for failing to communicate with Plaintiff, for misleading Plaintiff, and for failing to negotiate a settlement.  Id. ¶ 142.  Plaintiff then apparently proceeded pro se and filed a motion in August 2012 seeking a multitude of orders from Judge DeLorenzo.  Id. ¶ 145.  Judge DeLorenzo denied Plaintiff's requests on October 18, 2012, and granted Mr. Crane temporary custody of the Children on December 24, 2012.  Id. ¶¶ 146, 148.  Plaintiff then filed an application for a temporary restraining order ("TRO") on January 4, 2013.  Id. ¶ 150.  Judge DeLorenzo granted the TRO, but after a February 2013 hearing, he declined to enter a final restraining order.  Id. ¶¶ 151, 153.  Plaintiff then filed yet another round of motions seeking various forms of relief, all of which were denied by Judge DeLorenzo on May 10, 2013.  Id. ¶¶ 155-57.

Shortly thereafter, the case was transferred to Defendant Judge Gerald C. Escala, apparently to preside over the custody trial between Plaintiff and Crane, which began on June 4,

---

[2] All judges mentioned in the Factual Background are part of the group of defendants moving collectively to dismiss as the Judiciary Defendants.

2013.  Id. ¶¶ 36, 153, 157, 162.  Plaintiff claims that her trial attorney, Defendant Alexandra Stremler, Esq., informed Plaintiff on the morning of June 4 that she was "backing out of the trial." Id. ¶ 164.  Plaintiff alleges that Judge Escala permitted Stremler to withdraw after conferring with Stremler, Van Aulen, and Defendant Judge Bonnie J. Mizdol, the Presiding Judge for Bergen County Family Court.[3]  Id.  ¶¶ 38, 165.  Judge Escala then allegedly forced Plaintiff to proceed with the trial pro se and without an adjournment.  Id. ¶ 165.  Plaintiff levels numerous allegations of misconduct on the part of Judge Escala and others, essentially claiming that the custody trial was a sham proceeding.  See id. ¶¶ 167-80.  Plaintiff claims that attorneys Van Aulen and Stremler conspired with Judges DeLorenzo, Escala, and Mizdol to sabotage Plaintiff's case and violated the Rules of Professional Conduct and judicial canons in the process.  Id. ¶¶ 161, 169.  Plaintiff also takes issue with a number of Judge Escala's rulings during the trial, alleging that they violated Plaintiff's right to due process.  Id. ¶ 172.

For example, Plaintiff focuses specifically on Defendant Dr. Judith Brown Greif's role in the trial.  Dr. Greif is a social worker and custody evaluator who testified during the custody trial on behalf of Mr. Crane.  Id. ¶¶ 53, 173, 194.  Plaintiff claims that Judge Escala had a longtime friendship with Dr. Greif which he failed to disclose.  Id. ¶ 173.  Plaintiff further alleges that Judge Escala improperly favored Dr. Greif's "biased report."  Id. ¶ 175.  Plaintiff's allegations of impropriety stem from her view that Dr. Greif is a misogynist and a proponent of a scientifically unsupported theory called "Parental Alienation Syndrome."  Id. ¶ 195.  Plaintiff comments

---

[3] Judge Mizdol's role in the matter is unclear from the Complaint, which contains no other specific factual allegations concerning Judge Mizdol.

extensively on Dr. Greif's reputation and claims that Dr. Greif profits from family turmoil, endangers children, and is corrupt, biased, and unethical.[4]   See id. ¶¶ 196-202.

Based on the foregoing, Plaintiff alleges that Judge Escala should have credited the opinion of Defendant Bergen Family Center ("BFC") rather than that of Dr. Greif.  Id. ¶ 175.  Plaintiff states that Judge Escala should have considered the Children's preference, which allegedly was "to live with their mother."  Id. ¶ 176.  Plaintiff further concludes that Judge Escala's failure to recognize her status as a domestic violence victim demonstrated Judge Escala's "blatant lack of seriousness" and rendered Judge Escala himself an abuser.  Id. ¶¶ 178-79.  Plaintiff claims that Judges DeLorenzo and Escala therefore "failed to protect children from domestic violence."  Id. ¶ 180.  As stated previously, Judge Escala entered judgment after the trial on August 30, 2013, awarding legal and physical custody of the Children to Mr. Crane.  Id. ¶ 87.

Shortly thereafter, Plaintiff filed a complaint sometime during the fall of 2013 against Judge Escala with Defendant Advisory Committee on Judicial Conduct (the "ACJC") in which she alleged judicial misconduct as described above.  Id. ¶¶ 64, 266.  The ACJC subsequently found no wrongdoing and dismissed the complaint.  Id. ¶ 267.  Plaintiff claims that the ACJC failed to conduct a proper investigation and is simply "covering up Defendants' fraud."  Id.

Plaintiff also sought to appeal Judge Escala's decision to the Appellate Division of the New Jersey Superior Court (the "Appellate Division").  Id. ¶ 268.  Plaintiff claims that Judge Victor Ashrafi of the Appellate Division, among others, blocked her from obtaining free transcripts of the

---

[4] Based on these allegations, Plaintiff filed a complaint with Defendant Attorney General Board of Ethics ("AGBOE") seeking an investigation into Dr. Greif.  Compl. ¶ 203.  The AGBOE informed Plaintiff that it had investigated the matter and found no evidence of wrongdoing or professional misconduct. Id. ¶ 204.  Plaintiff attributes this outcome to the AGBOE's manipulation of the investigation, which she doubts took place in the first instance.  Id.  Plaintiff therefore claims that the AGBOE "has conspired with other Defendants as part of a corrupt organization engaging in a pattern of racketeering and RICO ENTERPRISE."  Id.

custody proceedings.  Id.  Apparently, Plaintiff requested that the cost of producing the trial court transcripts be waived, a request that was opposed by Defendant Office of the County Counsel (the "OCC").  Id. ¶ 269.  The Appellate Division then informed Plaintiff that her appeal would be dismissed if she failed to pay the deposit for the transcripts by August 31, 2014.  Id. ¶ 275.  Although not expressly stated by Plaintiff, it appears that her appeal was dismissed shortly after that date.  Plaintiff names the Appellate Division and a number of its judges as defendants, see Compl. ¶¶ 42-48, claiming that they simply serve as a "rubber stamp" for the trial courts.  Id. ¶ 271.  Plaintiff states that the Appellate Division has "aid[ed] and abett[ed] the abuse of discretion of the lower courts," which Plaintiff claims amounts to a pattern of racketeering.  Id.  Plaintiff also implicates the OCC in this alleged scheme.  Id.

### B.  Allegations Against Other Defendants

Other allegations in the Complaint deal with parties bearing some collateral relationship to the custody proceedings.  For completeness, the Court will briefly summarize Plaintiffs the allegations against defendants who are currently moving to dismiss.

#### 1.  The Good Shepherd Defendants

The Good Shepherd Defendants consist of the following: (1) Good Shepherd Lutheran Church, a church located in Glen Rock New Jersey; (2) Reverend Dr. Roger W. Spencer, the head pastor of the Church; and (3) Janet Tenore, the Church secretary.  Id. ¶¶ 66-68.  Based on the allegations in the Complaint, it appears the Children attended Sunday School and received Holy Communion there.  Id. ¶¶ 181-83. Plaintiff claims that the Good Shepherd Defendants, along with the other Defendants, "colluded to keep [Plaintiff] out of her children's religious upbringing" by administering Holy Communion to the Children against Plaintiff's wishes.  Id. ¶ 181.  Plaintiff complains that the Good Shepherd Defendants failed to conduct background checks on Mr. Crane

and Defendant Luciana Coutinho prior to allowing them to teach Sunday School at the church.  Id. ¶ 182.  Plaintiff further states that the Good Shepherd Defendants are "aiding and abetting two abusers and allowing them to influence and corrupt children in their church," which Plaintiff claims constitutes a pattern of racketeering activity.  Id.

### 2.  Judge Doyne and Chief Justice Rabner

Plaintiff then devotes three substantive paragraphs to Judge Peter Doyne of the Bergen County Superior Court and Chief Justice Stuart Rabner of the New Jersey Supreme Court, claiming that she has "implored [them] to take action against [Judge Escala]," but they refused to do so.  Id. ¶¶ 39-40, 185-86.  Plaintiff takes issue with Judge Escala's recall to the bench, which she claims "has perpetuated an obstruction of justice and constitutional violations; and aided and abetted a pattern of racketeering activity."  Id.  Plaintiff claims that Judge Escala retaliated against her for lodging complaints with Chief Justice Rabner and Judge Doyne.  Id. ¶ 187.

### 3.  Lisa Estrin

Lisa Estrin is a social worker allegedly hired by Mr. Crane to provide counseling to the Children in violation of Plaintiff's and Crane's joint custody agreement.  Id. ¶¶ 59, 205.  Plaintiff claims that Ms. Estrin was hired to skew the ongoing custody evaluations and colluded with Mr. Crane to portray Plaintiff in a negative light.  Id. ¶¶ 206-07.  In short, Plaintiff alleges that Ms. Estrin excluded Plaintiff from treatment decisions and did not obtain Plaintiff's consent for the treatment.  Id. ¶¶ 211-13.  Plaintiff claims that Ms. Estrin "engaged in vendor misfeasance and malfeasance" and "profited from intentionally harming two children."  Id. ¶ 216.  Ms. Estrin's alleged misconduct, Plaintiff asserts, amounts to a pattern of racketeering when combined with the other Defendants' alleged support.  Id.

### 4.  Kathy Katona and Diana Moskal

Kathy Katona serves as a court-appointed mediator in Bergen County Family Court.  Id. ¶ 58.  She served in that capacity on September 17, 2013, in connection with Plaintiff's dispute with Crane regarding the creation of a new "Parenting Time Agreement."  Id. ¶ 219.  This mediation was unsuccessful.  Id.  At the next two mediations, Plaintiff and Mr. Crane remained in separate rooms.  Id. ¶ 221.  Plaintiff claims that Ms. Katona bullied and coerced her and made offensive comments during the mediation, which constitute an intentional infliction of emotional distress. Id. ¶¶ 222-24.

Diana Moskal is the Family Division Manager of the Bergen County Family Court.  Id. ¶ 57.  The chief factual allegation against Ms. Moskal is that she "failed to handle and conclude the custody litigation expeditiously."  Id. ¶ 127; see also id. ¶ 276.  Plaintiff also claims that Ms. Moskal, along with others, deliberately hid Mr. Crane's financial information from her.  Id. ¶ 313. The balance of the allegations against Ms. Moskal amount to legal conclusions.  See id. ¶¶ 228, 299, 332, 335.

### 5.  The Coutinhos

The Coutinhos' role is not exactly clear from the Complaint.  Plaintiff alleges that they "conspired with [Mr. Crane] and refused to cooperate with the [custody] evaluations … and conspired to profit from [Mr. Crane's] financial abuse of Plaintiffs to achieve the result of obtaining and enjoying property at the expense of Plaintiffs."  Id. ¶ 132.  Plaintiff claims later that the Coutinhos abused the Children during DYFS's involvement.  Id. ¶ 241.  Specifically, Plaintiff claims that she reported "physical altercations and assaults [Mr. Crane] and [Ms. Coutinho] inflicted against the children."  Id. ¶ 243.  As stated above, Luciana Coutinho is also mentioned separately in the context of Plaintiff's allegations against the Good Shepherd Defendants.

### 6.  The DYFS Defendants

Plaintiff's allegations against the DYFS Defendants largely focus on her dissatisfaction with the manner in which DYFS and its employees handled her case.  See id. ¶¶ 225-55.  Plaintiff called DYFS on multiple occasions to report alleged abuse by Crane.  Id. ¶¶ 225-27, 232, 236. Eventually, Judge Escala intervened on December 10, 2013, admonishing Plaintiff for calling DYFS and redirecting the agency's involvement.  Id. 237-38.  The family's DYFS case worker recommended family therapy.  Id. ¶¶ 239-40.  Plaintiff continued to allege abuse of the Children by Crane and the Coutinhos, and she alleges that the DYFS Defendants were indifferent and failed to protect the Children.  Id. ¶¶ 241-45.  Plaintiff claims that one of the DYFS Defendants, Patrick Yan, is incompetent as a caseworker and "is intentionally trying to brainwash the children."  Id. ¶¶ 247-48.  Plaintiff complains that Mr. Yan is biased and the DYFS has failed to adequately train workers, resulting in abuse of Children.  Id. ¶¶ 249-50.  Plaintiff also devotes a portion of the introductory section of the Complaint to criticizing child protective services in general and DYFS in particular.  See id. ¶¶ 20-23.  Plaintiff proclaims DYFS a "systematic failure" and charges that its employees are corrupt and incompetent.  Id. ¶¶ 21-22.

### C.  The Claims and the Relief Sought

Plaintiff instituted this action on September 24, 2014.  The Complaint contains twelve separate counts.  See id. ¶¶ 281-393.  Plaintiff alleges the following federal claims: (1) violation of 42 U.S.C. §§ 1983 and 1985 for denial of Plaintiff's 1st, 4th, and 14th Amendment rights;[5] (2) a Monell claim based on a policy, custom, or practice; and (3) violation of the Racketeer Influenced

---

[5] Count One appears to address Plaintiff's 14th Amendment due process claim, Count Three addresses Plaintiff's 1st Amendment freedom of religion claim, and Count Five addresses Plaintiff's 4th Amendment unlawful search and seizure claim.  See Compl. ¶¶ 281-306, 319-28, 340-44.

and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO").  Id. ¶¶ 281-344.  The remainder of Plaintiff's claims are grounded in state law.  See id. ¶¶ 345-93.

Plaintiff claims that she and the Children suffered a laundry list of injuries as a result of these violations.  See id. ¶ 395.  In order to remedy those injuries, Plaintiff seeks declaratory, injunctive, and monetary relief in various forms.  See id. ¶ 396.  To provide a few examples, Plaintiff asks this Court to do the following: (1) declare the Bergen County Family Court proceedings described above void ab initio for lack of subject matter jurisdiction; (2) enjoin essentially all entities and persons connected to the proceedings from further involvement; (3) order the state entities to provide Plaintiff with free transcripts of the proceedings; (4) temporarily seize all of Defendants' assets; (5) award $100 million in damages and treble damages under RICO; and (6) award Plaintiff interest calculated from the date Mr. Crane filed his petition for custody in Bergen County Family Court. Id. ¶¶ 396(e), (l)-(n), (s)-(u).  In addition, a large number of Plaintiff's requests for relief are declaratory judgments that call upon this Court to reorganize the New Jersey justice system, create a new federal court for interstate custody disputes, and rewrite New Jersey family law.  See id.  ¶¶ 396(aa)-(mm).

## II.   STANDARD OF REVIEW

### A.  Motions to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . the claim is and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotations omitted).  In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable

inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

While the above framework still applies in cases where, as here, a plaintiff is proceeding pro se, the court is required to construe the pro se complaint more liberally than it would a complaint drafted by an attorney.  Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011). This less stringent standard does not mean, however, that pro se plaintiffs need not abide by the basic rules of pleading; they "still must allege sufficient facts in their complaints to support a claim."  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

### B.  Motions to Dismiss Pursuant to Rule 12(b)(1)

Several Defendants alternatively move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  A Rule 12(b)(1) motion to dismiss may be a challenge either to the face of the complaint or to the sufficiency of the underlying facts contained in the complaint.  See Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  On a facial attack, the allegations in the complaint are entitled to a presumption of truthfulness, just as they are in the context of motion under Rule 12(b)(6).  Id.  On a factual challenge, however, the allegations in the complaint are not entitled to such a presumption.  Polanco v. Omnicell, Inc., 988 F. Supp. 2d 451, 458 (D.N.J. 2013).  The reviewing court may therefore consider "conflicting written and oral evidence … and … may decide for itself the factual issues which determine jurisdiction."  Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J. 1995).  The party seeking to invoke federal jurisdiction bears the burden of establishing its existence.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

### III.  DISCUSSION

### A.  Preliminary Matters

#### 1.  Failure to Comply With Rule 8(a)

As an initial matter, the Court finds that the Complaint fails to comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(1) (emphasis added).  The Complaint consists of 120 pages and 396 separate paragraphs.  Many of those paragraphs contain statements that are wholly irrelevant to Plaintiff's claims or consist entirely of legal conclusions without any factual support.  This begins on the first page of the Complaint, wherein Plaintiff alleges in Paragraph 3 that all Defendants are engaged in a pattern of racketeering activity "through a calculated system

13

of eugenics and social engineering."   Compl. ¶ 3.   Such bald legal conclusions are present throughout the Complaint and are generally of the same tenor.   See, e.g., id. ¶¶ 9-10, 18, 20, 78, 79, 117, 119, 138, 160, 182, 186, 294, 299-306.   Plaintiff even devotes six full pages of the Complaint to quoting irrelevant case law.   See id. ¶ 184.

Finally, while Plaintiff names as defendants essentially anyone with any connection to the custody proceedings, she largely fails to make any specific allegations against many of them.   The Complaint fails not only violates Rule 8(a)'s "short and plain statement" requirement, but it also simply fails to demonstrate an entitlement to relief against any of the defendants.   Therefore, the Court would be justified in dismissing the Complaint for failure to comply with Rule 8(a).   Cf. Venezia v. Union Cnty. Prosecutor's Office, No. 10-6692, 2011 WL 2148818, (D.N.J. May 31, 2011) (complaint spanning 55 pages and containing 200 pages of exhibits did not comply with Rule 8(a)).

This dismissal also applies to those Defendants who have not moved to dismiss the Complaint, a group that consists of the following: (1) Governor Chris Christie; (2) the BFC, Constance Ritzler, and John Cuttito; (3) Alexandra Stremler, Esq.; (4) Roger Radol, Esq.; (5) Full Circle and Kristin Cirelli; (6) the AGBOE; and (7) Bank of America Merrill Lynch.[6]   As with all of the moving Defendants, Plaintiff's allegations against the non-moving Defendants are insufficiently pled to demonstrate an entitlement to relief.   Therefore, the Court will sua sponte

---

[6] Of these Defendants, only Mr. Radol has appeared.  Dkt. No. 16.  He answered the Complaint on December 1, 2014.  Dkt. No. 28.  Of all other Defendants in this group, only a summons for Ms. Stremler was placed on the docket as executed.  Dkt. No. 38.  The clerk entered default as to Ms. Stremler on March 10, 2015.  There is no proof of service as to the remainder of the non-moving Defendants.   Should Plaintiff choose to file an amended complaint against those Defendants, Plaintiff shall serve the amended complaint on those Defendants and place the executed summonses on the docket.  If Plaintiff fails to properly serve those Defendants within 120 days of filing of the amended complaint, the Court will dismiss the case as to those Defendants pursuant to Federal Rule of Civil Procedure 4(m).

exercise its discretion to dismiss certain counts in the Complaint without prejudice as to the non-moving Defendants with the exception of the AGBOE, which will be dismissed with prejudice because it is entitled to sovereign immunity under the Eleventh Amendment to the Constitution.[7] See Tillio v. Northland Grp. Inc., 456 F. App'x 78, 79 (3d Cir. 2012) (sua sponte dismissal of pro se complaint not an abuse of discretion); see also M.G. v. Crisfield, 547 F. Supp. 2d 399, 405 (D.N.J. 2008) ("A court can dismiss a claim sua sponte if its insufficiently plead under Rule 8(a)(2)).

Because the Complaint is deficient for additional reasons, however, the Court will not dismiss the Complaint solely because of the failure to comply with Rule 8(a).  See Howe v. Litwack, No. 12-4480, 2013 WL 3305994, at *6 (D.N.J. June 30, 2013) (finding that the complaint failed to comply with Rule 8(a) but reviewing the sufficiency of the complaint on other grounds).

### 2.   As a Non-Lawyer Pro Se Plaintiff, Ms. Wolf May Not Represent Her Children

Plaintiff seeks in this suit to represent her Children, D.C. and G.C.  As has been noted, Plaintiff is proceeding in this action pro se, and Plaintiff has not asserted that she is herself a licensed attorney.  In such circumstances, it is well-settled law that Plaintiff is "not entitled to play the role of attorney for [her] children in federal court."  Osei-Afriyie by Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882 (3d Cir. 1991).  Therefore, the relief sought in the Complaint is barred insofar as it is sought on behalf of D.C. and G.C.

### B.  Plaintiff's Claims are Barred Under the Rooker-Feldman Doctrine

Numerous Defendants argue in their motions to dismiss that this Court lacks subject-matter jurisdiction to hear this case under the Rooker-Feldman Doctrine.  To the extent that the Complaint

---

[7] Sovereign immunity is discussed below at Part III.E.

seeks to overturn orders and judgments issued by the Bergen County Family Court, this Court agrees.

"The <u>Rooker-Feldman</u> Doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." <u>Marran v. Marran</u>, 376 F.3d 143, 149 (3d Cir. 2004). Stated differently, the Doctrine exists "to prevent lower federal courts from reviewing state court decisions in an appellate capacity." <u>ITT Corp. v. Intelnet Int'l Corp.</u>, 366 F.3d 205, 212 n.14 (3d Cir. 2004). In order for the Doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the state court to review and reject the state judgments." <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)).

Applying those four requirements here, the Court is convinced that it lacks subject matter jurisdiction over this case to the extent that Plaintiff seeks review of decisions rendered in the Bergen County Family Court. As the Court has noted from the outset, the Complaint is almost singularly focused on the custody proceedings in the Bergen County Family Court. With respect to the first requirement, there is no dispute that Plaintiff did not prevail in those proceedings, since custody of D.C. and G.C. was ultimately awarded to Mr. Crane. Second, many of the allegations in the Complaint deal specifically with injuries allegedly caused by that state court judgment. Plaintiff states at multiple points that the custody proceedings resulted in the loss of employment, development of post-traumatic stress disorder, and the loss of child support. <u>See, e.g.,</u> Compl. ¶ 137. Moreover, the alleged harms in the separate counts of the Complaint focus solely on those

flowing from the outcome of the custody proceedings.  See, e.g., id. ¶¶ 282-305.  There is no question that Plaintiff complains in this lawsuit of injuries caused by the custody proceedings.

The Court also finds that the Bergen County Family Court judgments predate this suit.  The initial order granting custody to Mr. Crane was filed on August 30, 2013.  The latest Bergen County Family Court ruling to which the Complaint refers is a July 9, 2014, temporary restraining order in which Plaintiff was barred from contact with her Children.  Id. ¶ 88.  A final restraining order was entered after notice and a hearing on July 22, 2014.  Dkt. No. 8-5, Ex. B to Mot. to Dismiss of Peter Van Aulen, at 31-32.[8]  The instant case was filed on September 24, 2014.  The Family Court judgments were therefore rendered prior to the filing of this suit.

Finally, the relief that Plaintiff seeks makes clear that she is inviting review of the Bergen County Family Court judgments.  Indeed, Plaintiff unequivocally requests that this Court declare all of the Family Court proceedings void.  Aside from that clear statement of her desire to overturn the rulings in Family Court, the majority of the relief sought by Plaintiff stems from various state court rulings that Plaintiff seeks to rectify in this lawsuit.  The Court is therefore satisfied that the facts of this case justify application of the Rooker-Feldman Doctrine.

This is not the first case in which a plaintiff has attempted to file suit in federal court following an unfavorable custody determination in state court.  Indeed, several such cases have been filed in this Circuit in recent years, and the Third Circuit has consistently affirmed district court dismissals for lack of subject-matter jurisdiction under the Rooker-Feldman Doctrine.  See Young v. Dubow, 411 F. App'x 456 (3d Cir. 2011) (summarily affirming dismissal of complaint filed by mother against all entities and persons connected to state court custody proceedings after

---

[8] Although Plaintiff did not mention the July 22, 2014, order in her Complaint, the Court may properly consider the order as it is a matter of public record.  See Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

custody was awarded to father); Johnson v. City of New York, 347 F. App'x 850 (3d Cir. 2009) (affirming district court determination that Rooker-Feldman barred claims to the extent plaintiff sought review of family court decisions); McKnight v. Baker, 244 F. App'x 442 (3d Cir. 2007) (affirming grant of summary judgment where it was clear that crux of plaintiff's complaint was that defendants conspired to deprive him of his visitation rights).

Courts in this district have also consistently determined that they lack subject matter jurisdiction over claims that seek to overturn state family court decisions.  See Dobron v. N.J. Div. of Youth & Family Servs., No. 13-2353, 2014 WL 1094854 (D.N.J. Mar. 18, 2014) (Rooker-Feldman barred plaintiff's claims because they all "directly or indirectly challenged[d] the validity of the family court's determination"); Reed v. N.J. Div. of Youth & Family Servs., No. 09-3765, 2012 WL 1224418 (D.N.J. Apr. 10, 2012) (dismissing plaintiffs' suit alleging violations of due process rights following state court termination of parental rights because to find such violations "would amount to a determination that the Family Part's judgment was erroneously entered, or would render the judgment ineffectual"); Melleady v. Blake, No. 11-1807, 2011 WL 6303245, at *10-13 (D.N.J. Dec. 15, 2011) (dismissing plaintiffs' constitutional claims because adjudication of those claims would require review of family court decisions).

The same result must obtain in this case.  Plaintiff's objective in this litigation is clearly to nullify the outcome of the custody proceedings in Bergen County Family Court.[9]  This is not

---

[9] Indeed, Plaintiff's intent is further revealed by her latest filing, which seeks a temporary restraining order that would do the following: (1) return Plaintiff's children to her custody; (2) enjoin Defendants from further action or communication with Plaintiff and her children; and (3) declare all orders of the Bergen County Family Court void.  Dkt. No. 75, Appl. for Order to Show Cause at 1.

permitted.  Therefore, this Court lacks subject matter jurisdiction over this case to the extent

Plaintiff seeks review of decisions rendered in Bergen County Family Court.[10]

### C.  The Individually Named Judges Are Either Immune From Suit or Must Be Dismissed for Failure to State a Claim

"It is a well-settled principle of law that judges are generally 'immune from a suit for

money damages'" for actions taken in the performance of their official duties.  Figueroa v.

Blackburn, 208 F.3d 435, 440 (3d Cir. 2000) (quoting Mireles v. Waco, 502 U.S. 9, 9 (1991)).

Indeed, judicial immunity even extends to judicial acts that are taken "in excess of [the judge's]

jurisdiction, and are alleged to have been done maliciously or corruptly."  Stump v. Sparkman,

435 U.S. 349, 355-56 (1978).  There are accordingly only two situations in which judicial

immunity will not attach: (1) where the judge's acts were non-judicial in nature—that is, they were

"not taken in the judge's judicial capacity"; or (2) where the judge's acts were judicial in nature,

but were "taken in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11-12.

In this case, Plaintiff seeks various forms of money damages, including compensatory

damages of $100 million, punitive damages in the same amount, and treble damages pursuant to

RICO.  She indiscriminately seeks these damages against all Defendants, a group that includes the

following twelve judges: Chief Justice Rabner, Judge Escala, Judge Mizdol, Judge Doyne, Judge

DeLorenzo, Judge Ashrafi, Judge William E. Nugent, Judge Harry G. Carroll, Judge Ellen L.

Koblitz, Judge John C. Kennedy, Judge Jerome M. St. John, and Judge Joseph L. Yannotti.  The

Court notes at the outset that the Complaint fails to plead any substantive allegations against a

number of these judges.  In any event, the substantive allegations that Plaintiff does plead against

---

[10] In addition, to the extent Plaintiff seeks a child custody determination, the "domestic relations exception" to federal diversity jurisdiction bars Plaintiff's suit.  See Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008).

the judges do not identify either a non-judicial act or an act taken in the complete absence of jurisdiction.

With respect to Judge Escala, Plaintiff complains largely about actions taken by the Judge during the course of the custody trial. Without doubt, these actions fall squarely within the realm of judicial acts for which Judge Escala is absolutely immune from liability. The allegations against Judges DeLorenzo and Mizdol also focus on actions taken in the performance of their duties as judges. Similarly, Judge Ashrafi's alleged action in denying Plaintiff's request for free transcripts is a judicial act. As for Chief Justice Rabner and Judge Doyne, Plaintiff complains only of their alleged failure to discipline Judge Escala and of the decision to recall Judge Escala to the bench. Certainly, their action or inaction in this context is an act or failure to act in their capacity as judges. Therefore, Chief Justice Rabner, Judge Doyne, Judge Escala, Judge Mizdol, Judge DeLorenzo, and Judge Ashrafi are entitled to judicial immunity and must be dismissed from this case on that basis.

The remaining six judges are Appellate Division judges. See Compl. ¶¶ 42-46, 48. Plaintiff mentions these judges in a single substantive paragraph in the Complaint. Id. ¶ 271. There, she claims that the judges are merely a "rubber stamp" for the trial courts and offers the legal conclusion that the judges therefore "engage in [a] pattern of racketeering activity and RICO ENTERPRISE." Id. These judges are also entitled to immunity for any judicial acts done in connection with Plaintiff's custody proceedings. But Plaintiff does not identify any acts—either judicial or non-judicial—done by these judges. Accordingly, these judges are not only entitled to absolute immunity, but they are also appropriately dismissed from this case for a more fundamental reason: Plaintiff simply fails to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Indeed, even under the broadest

possible reading of the Complaint, Plaintiff's single substantive paragraph with respect to these judges reveals no actionable conduct.  All individually named judges are accordingly dismissed from this case with prejudice.  As will be more fully developed below, however, each of Plaintiff's causes of action fails as a general matter, and the Court separately relies on that reasoning as a basis for dismissal.

### D.  Kathy Katona and Diana Moskal Are Entitled to Quasi-Judicial Immunity and the Allegations Against Them Fail to State a Claim

Kathy Katona served as a court-appointed mediator during the custody proceedings, and Diana Moskal served as the Family Division Manager for the Bergen County Family Court during the relevant time period.  With respect to Ms. Katona, Plaintiff essentially alleges that she was rude to her during the mediation sessions.  See Compl. ¶¶ 222-23.  As to Ms. Moskal, Plaintiff vaguely claims that she "failed to handle and conclude the custody litigation expeditiously."  Id. ¶ 127.  The allegations therefore concern actions taken by Ms. Katona and Ms. Moskal in their respective capacities as a mediator and a court administrator.  As such, they are entitled to quasi-judicial immunity, which shields them "from liability for damages in a suit challenging" their conduct in carrying out court orders.  Addlespurger v. Corbett, 461 F. App'x 82, 85 (3d Cir. 2012) (citing Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772-73 (3d Cir. 2000)).  These defendants may therefore be dismissed on that basis alone.  More fundamentally, the Complaint simply fails to plead sufficient facts giving rise to liability as to either defendant.  See Iqbal, 556 U.S. at 678.  Ms. Katona and Ms. Moskal are therefore dismissed from this case with prejudice.

### E.  The Eleventh Amendment Bars Plaintiff's Claims Against State Agencies and State Officials Sued in Their Official Capacity

Plaintiff names the following state agencies as defendants in this case: (1) the ACJC; (2) the AGBOE; (3) DYFS; (4) the Bergen County Family Court; (5) the Appellate Division; and (6)

the Office of Court Administration.  The Eleventh Amendment to the Constitution grants to the states immunity from suit.  In addition, it is well-settled that such immunity extends to "governmental entities that are considered arms of the State."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 70 (1989); <u>see also</u> <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997). As state-created agencies that are funded by the state of New Jersey, there cannot be any serious dispute that the above-named Defendants are arms of the State for purposes of the Eleventh Amendment.  Therefore, those Defendants are dismissed from this case with prejudice.

**F.  The Allegations Concerning the ACJC and the OCC Do Not State a Claim**

Plaintiff's specific allegations against the ACJC and the OCC fail to state any claim for relief.  With respect to the ACJC, Plaintiff devotes two paragraphs of the Complaint to substantive allegations, and these paragraphs reveal no actionable conduct.  <u>See</u> Compl. ¶¶ 266-67.  In those paragraphs, Plaintiff claims that she filed a complaint against Judge Escala, presumably with the ACJC, and that the ACJC "failed to conduct a proper investigation, if any, and dismissed the complaint."  Plaintiff then offers the legal conclusion that ACJC is involved in a cover-up of Defendants' fraud.  Plaintiff provides no further detail of the ACJC's alleged misconduct.  As with the judges, the allegations in the Complaint are woefully deficient and fail to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 678.  Thus, even if the ACJC were not entitled to immunity under the Eleventh Amendment, Plaintiff simply fails to state a claim against it.

The same reasoning applies to the OCC.  Plaintiff's only specific claim with respect to the OCC is that it (along with others) "blocked Plaintiff … from obtaining free transcripts of her case, which prohibited her from filing an appeal."  Compl. ¶ 268.  The OCC apparently argued in opposition to Plaintiff's request for free transcripts that she had not claimed the loss of a

constitutional right that would entitle her to free transcripts in a civil case.  Id. ¶ 269.  Plaintiff

concludes from the OCC's opposition that the OCC and the rest of the Defendants must have

"colluded and conspired here to prevent [Plaintiff] from filing an appeal."  Id.  The OCC is then

accused of being a "rubber stamp" for the lower courts.  Id. ¶ 271.  These are all of the allegations

against the OCC contained in the Complaint—clearly insufficient to plausibly state a claim for

relief.  The Complaint must therefore be dismissed in its entirety as to the ACJC and the OCC.

### G.  Plaintiff's Constitutional Claims

#### 1.  Counts One, Three, and Five: Claims Under 42 U.S.C. § 1983[11]

Plaintiff alleges violations of the following constitutional rights in Counts One, Three, and

Five, respectively: (1) her Fourteenth Amendment rights to substantive and procedural due

process; (2) her First Amendment right to the free exercise of religion; and (3) her Fourth

Amendment right to be free from unreasonable searches and seizures.  Plaintiff appears to allege

these violations against all Defendants generally.

Under 42 U.S.C. § 1983, private citizens are provided with a mechanism to remedy

violations of their federal civil rights.  In order to state a claim under § 1983, a plaintiff must

establish two fundamental elements: (1) the plaintiff was deprived of "a right secured by the

Constitution and the laws of the United States"; and (2) "the alleged deprivation was committed

---

[11] Plaintiff also cites to 42 U.S.C. § 1985, which authorizes civil actions for conspiracies to interfere with civil rights.  Plaintiff does not cite a specific subsection of the statute, but it would appear that she attempts to allege a conspiracy under § 1985(3).  That subsection concerns conspiracies to deprive persons of equal protection of the laws.  In order to state a claim under § 1985(3), Plaintiff must plead four elements, one of which requires the plaintiff to allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993); see also D'Aurizio v. Palisades Park, 963 F. Supp. 378, 385-86 (D.N.J. 1997) (setting forth the four elements of a § 1985(3) claim).  Plaintiff fails to allege any race- or class-based discrimination in this case.  Accordingly, to the extent Plaintiff attempts to state a claim under § 1985, that claim is dismissed.

by a person acting under color of state law."  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The second of these elements generally requires that the alleged violators of the plaintiff's rights

be "state actors" as that term has been interpreted under the Fourteenth Amendment.  Kach v.

Hose, 589 F.3d 626, 646 (3d Cir. 2009).  Therefore, private parties are generally not amenable to

suit under § 1983 unless their conduct is "fairly attributable to the state."  Lugar v. Edmondson Oil

Co., 457 U.S. 922, 937 (1982).

### a.  Plaintiff's Claims Against Non-State Actors Must be Dismissed

To determine whether a private actor's conduct is fairly attributable to the state, the

reviewing court asks the following: (1) whether the conduct involves the exercise of "powers that

are traditionally the exclusive prerogative of the state"; (2) whether the private party has enlisted

the help of the state or acted "in concert with state officials"; and (3) whether "the [s]tate has so

far insinuated itself into a position of interdependence with the acting party that it must be

recognized as a joint participant in the challenged activity."  Kach, 589 F.3d at 646 (internal

quotations and citations omitted).  If any of these three tests is satisfied, the private conduct

constitutes state action.  See id.  Several of the moving Defendants are not state actors under any

of these three tests.  Accordingly, Plaintiff's constitutional claims must be dismissed as to them.

As to the Good Shepherd Defendants, the Complaint is completely devoid of any

allegations even suggesting that they engaged in conduct that could be viewed as state action.

Indeed, as previously noted, the Good Shepherd Defendants are specifically mentioned in a mere

six paragraphs out of the 396 paragraphs in the Complaint.  See Compl. ¶¶ 66-68, 181-83.  Nothing

in those paragraphs alleges any relationship between the Good Shepherd Defendants and any

governmental actor.  Rather, Plaintiff simply complains of the administration of Holy Communion

to the Children—an action that is not alleged to have been done under state compulsion or in

concert with state actors.  The Court is therefore satisfied that Plaintiff fails to plead state action on the part of the Good Shepherd Defendants.

Plaintiff likewise fails to plead state action on the part of the Coutinhos and Mr. Crane.  As previously mentioned, the Coutinhos are scarcely mentioned in the Complaint, and even where they are, there is not a single allegation that could plausibly imply state action.  Moreover, although Mr. Crane is obviously mentioned throughout the Complaint, the allegations against Mr. Crane simply concern his role as an adverse litigant in the custody proceedings in state court.  The Court is therefore thoroughly satisfied that Plaintiff has failed to allege state action on the part of the Coutinhos and Mr. Crane.

Nor does Plaintiff allege state action by Defendant Lisa Estrin.  As summarized above, Ms. Estrin was hired by Mr. Crane to provide therapy to the Children in or about February 2013.  The Complaint provides no indication that Ms. Estrin was employed by the state, acting with the state's assistance, or had any relationship at all with the state.  Rather, the allegations in the Complaint simply suggest a private arrangement between Mr. Crane and Ms. Estrin for the provision of therapy to the Children.  This is not state action.  Therefore, Plaintiff's § 1983 claims must be dismissed as to Ms. Estrin.

Dr. Greif must be dismissed for the same reasons.  Plaintiff alleges in the Complaint that Dr. Greif was hired by Mr. Crane and Mr. Van Aulen for the purpose of providing a custody evaluation during the custody proceedings.  As an initial matter, Dr. Greif's alleged conduct unquestionably does not constitute the exercise of powers traditionally held by the state.  Moreover, Plaintiff does not claim that Dr. Greif was acting on behalf of or in concert with the state.  Plaintiff's averment that Dr. Greif was hired by Mr. Crane and Mr. Van Aulen—two private

actors—is fatal to her § 1983 claims.  The Complaint plainly does not justify an inference of state action by Dr. Greif.

Finally, Mr. Van Aulen, Mr. Radol, and Ms. Stremler are not state actors under the facts pled in the Complaint.  Plaintiff's allegations against them concern actions that they allegedly took as counsel during the course of the custody proceedings.  It is well-settled law that "[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."  Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999).  Plaintiff alleges no conduct on the part of Mr. Van Aulen, Mr. Radol, or Ms. Stremler that could be considered outside the scope of their duties as officers of the court.  Indeed, as to Mr. Van Aulen, Plaintiff merely focuses on papers that he filed on behalf of his client, Mr. Crane, and the various arguments that Mr. Van Aulen made before the Bergen County Family Court.  Similarly, Plaintiff's allegations regarding Mr. Radol and Ms. Stremler concern actions taken during their representation of Plaintiff.  The Court is therefore satisfied that Plaintiff fails to plead state action by Mr. Van Aulen, Mr. Radol, and Ms. Stremler, and Plaintiff's claims must be dismissed as to them.

Plaintiff's constitutional claims are accordingly dismissed with prejudice as to the Good Shepherd Defendants, the Coutinhos, Mr. Crane, Mr. Van Aulen, Mr. Radol, Ms. Stremler, Dr. Greif, and Ms. Estrin.

### b.  General Deficiencies

#### i.    Count Five: Fourth Amendment Claim

Plaintiff claims in Count Five that she was subjected to an unlawful search and seizure under the Fourth Amendment.  In support of that claim, she vaguely refers to an invasion of privacy by all of the Defendants generally and alleges that she was "subjected to abuse by Defendants for

over three years due to false state court proceedings violating [her] constitutional and due process rights." Compl. ¶ 342.  Nowhere does Plaintiff identify the person or place allegedly searched or the thing or person allegedly seized.  Reading the specific allegations in Count Five with the broader allegations in the Complaint provides no clarification.  In short, the Complaint fails to identify adequately conduct that would be actionable under § 1983 as a violation of the Fourth Amendment.  Thus, Count Five is dismissed in its entirety on that ground.

### ii.      Count Three: First Amendment Free Exercise Claim

As with Count Five, the allegations in Count Three come up well short of alleging violation of a constitutional right.  First, the only allegations in the Complaint concerning religion appear to be in connection with the Children's receiving Holy Communion, apparently against Plaintiff's wishes.  See Compl. ¶¶ 181-83.  Plaintiff makes the same basic allegations in the paragraphs corresponding to Count Three.  Id. ¶¶ 320-24.  Plaintiff essentially claims that she has a right to manage her Children's religious upbringing and that Defendants interfered with that right.  Plaintiff provides no indication of either how Defendants interfered with her rights or which Defendants were involved.  Rather, Plaintiff simply offers legal conclusions without providing any supporting facts.  In any event, Count Three appears to be another attempt by Plaintiff to undermine the decision of the Family Court to grant custody to Mr. Crane.  Indeed, it is well-established law in New Jersey that the custodial parent has the right to determine the religious upbringing of the children.  See, e.g., Feldman v. Feldman, 378 N.J. Super. 83, 91 (App. Div. 2005).  Moreover, to the extent Plaintiff seeks to vindicate her Children's First Amendment rights, she is barred from doing so as a pro se litigant.

Therefore, Count Three must be dismissed for failure to state a claim on which relief can be granted.

### iii.    Count One: Fourteenth Amendment Due Process Claim

This claim fails for similar reasons.  Essentially, Plaintiff alleges that Defendants violated her procedural and substantive due process rights by interfering with her right to parent her Children.  The Court addresses Plaintiff's procedural and substantive due process claims in turn.

In assessing whether a plaintiff states a claim for a procedural due process violation, the Court asks: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty or property; and (2) whether the procedures available provided the plaintiff due process of law."  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  A Plaintiff must have actually taken advantage of available state processes in order to state an adequate procedural due process claim.  Id.

As to the first question, there is no doubt that Plaintiff has a liberty interest as a parent "in the custody, care and management of [her] children."  Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997).  With respect to the second question, however, the allegations in the Complaint fail to establish how the state court procedures ultimately leading to the deprivation of that liberty interest were deficient.  Rather, Plaintiff's allegations are best characterized as grievances against those whom she believes committed some wrong against her during the course of the custody proceedings.  The touchstone of due process "is the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotations and citations omitted).  Plaintiff does not allege that she was denied such an opportunity; on the contrary, her own allegations indicate that she was given every opportunity to be heard.  Indeed, Mr. Crane was awarded legal and primary physical custody only after a hearing that spanned several days.  Moreover, Plaintiff was given notice of the July 9, 2014, order temporarily suspending her communication and visitation with the Children, and a hearing

28

was promptly held on July 22, 2014.  See Dkt. No. 8-5 at 31-35.  The process afforded to Plaintiff was therefore more than adequate.  See B.S. v. Somerset Cnty., 704 F.3d 250, 271-73 (3d Cir. 2013) (pre-hearing deprivation of child custody permitted, but parent is entitled to a prompt post-deprivation review).  Plaintiff therefore fails to provide any factual basis for the inference that she was denied procedural due process during the course of the custody proceedings.

Plaintiff's substantive due process claim also fails.  In order to state a claim for substantive due process violation, the plaintiff must allege the following elements: (1) the defendants were acting under color of state law; (2) "a protected property or liberty interest was at stake"; (3) the defendants owed the plaintiff a duty of care; and (4) plaintiff was deprived of her property or liberty interest within the meaning of the due process clause.  Roberts v. Mentzer, 382 F. App'x 158, 166 (3d Cir. 2010).  In addition, the alleged violation of the plaintiff's rights "must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Id. (quoting Kaucher v. Cnty. of Bucks, 455 F.3d 418, 425 (3d Cir. 2006)).  In order to satisfy that standard, the plaintiff must show at the very least that the state actors' conduct was grossly negligent or arbitrary.  Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3d Cir. 1999).

Plaintiff fails to meet this demanding standard.  First, Plaintiff's claim fails as to the non-state actors discussed above.  Thus, Plaintiff's substantive due process claim is dismissed as to those defendants.  As for the remaining state actors, Plaintiff satisfies the second element because, as noted above, she unquestionably has a liberty interest in the custody and care of the Children. Croft, 103 F.3d at 1125.  That liberty interest is not, however, absolute, and it may be "limited by the compelling governmental interest in the protection of children."  Id.  With respect to the third element, Plaintiff fails to establish which of the state actors, if any, owed her a duty of care. Therefore, Plaintiff's claim fails on that basis.

Even assuming that all four elements are met, however, the circumstances surrounding the deprivation of Plaintiff's liberty interest surely are not "so egregious, so outrageous, that [they] may fairly be said to shock the contemporary conscience." Kaucher, 455 F.3d at 425.  Indeed, the manner in which Plaintiff's custody and care of the Children has been limited resulted from an extensive custody battle before the Bergen County Family Court, and the Complaint provides no indication that any state actors acted arbitrarily or were grossly negligent during the course of those proceedings.  Put simply, the circumstances presented in this case fall well short of the "shocks-the-conscience" standard.  Cf. Miller, 174 F.3d at 374-77 (conduct of social worker in seeking ex parte restraining order for removal of children from mother's custody did not shock the conscience, even though, among other things, he asked the children leading questions regarding alleged abuse and requested that the mother produce all three children for examination although he only suspected abuse of one).  Plaintiff's substantive due process claim accordingly fails.

### H.  Count Four: Monell Claim

Under § 1983, a municipality may be held liable when it causes a constitutional violation through the implementation of a policy, custom, or practice.  Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978).  Where there is no underlying constitutional violation, however, a Monell claim cannot stand.  Knellinger v. York St. Property Development, LP, --- F. Supp. 3d ---, No. 14-4712, 2014 WL 5758007, at *6 (E.D. Pa. Nov. 6, 2014) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).  As discussed above, Plaintiff has failed to allege a constitutional violation.  Therefore, Count Four must be dismissed.[12]

---

[12] Even if Plaintiff had alleged a constitutional violation, the Monell claim is inadequately pled. First, the Eleventh Amendment bars such a claim to the extent that Plaintiff attempts to plead it against state agencies.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989).  Rather, a Monell claim is only cognizable against a municipality.  See Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991).  Plaintiff fails in the first instance to identify a specific

## I.  Count Two: Plaintiff's RICO Claim

In Count Two, Plaintiff alleges violation of the federal RICO statute, 18 U.S.C. §§ 1961-68.  Plaintiff appears to be specifically alleging violation of 18 U.S.C. § 1962(c), which provides, in pertinent part, that:

> It shall be unlawful for any person employed by or associated with any enterprise any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A valid claim under § 1962(c) must allege the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004).  In addition to these four elements, a plaintiff must also demonstrate that the § 1962 violation damaged his or her business or property.  18 U.S.C. § 1964(c).  Commonly referred to as the RICO standing requirement, § 1964(c) requires a plaintiff to "show that defendant's RICO violation was not only a 'but for' cause of his injury, but also that it was the proximate cause." Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005).

Here, Plaintiff fails in the first instance to establish that she has standing to bring a RICO claim because she has not alleged an injury to her business or property.  Instead, Plaintiff claims that the state court proceedings have caused the following damages: (1) loss of custody of her children; (2) lost wages; (3) medical, legal, and other expenses; and (4) various emotional and mental damages that caused Plaintiff to develop post-traumatic stress disorder.  Compl. ¶ 395.  All of these claimed injuries are personal in nature and are therefore not cognizable under RICO.  Cf. Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991) (medical expenses flowing

---

municipality against which she is asserting her claim.  The only named entity that could arguably serve as the requisite municipality is the OCC.  As stated above, however, the allegations against the OCC are deficient in every respect.  Thus, Plaintiff's claim fails on that fundamental ground.

from alleged conduct of defendants not recoverable under RICO). The only potentially cognizable RICO injury alleged is the loss of wages, but nothing in the Complaint even suggests that her lost wages resulted from the alleged conduct of Defendants as opposed to intervening factors such as the personal and emotional injuries Plaintiff claims. See Ayling, 396 F.3d at 271 (stating that lost wages are not speculative, but finding that "it would be difficult to determine to what extent plaintiffs' job loss was due to the alleged RICO acts and to what extent it was due to intervening factors"). Thus, Plaintiff fails to allege that her lost wages were proximately caused by the conduct of Defendants.[13]

Plaintiff also fails to allege the "racketeering activity" element of a cognizable § 1962(c) claim. "Racketeering activity" is defined at 18 U.S.C. § 1961(1) to include a bevy of federal and state crimes. Commonly referred to as the "predicate acts" required to establish a RICO violation, these underlying crimes and offenses range from mail fraud, 18 U.S.C. § 1341, to human trafficking, 18 U.S.C. §§ 1581-1592. In this case, Plaintiff alleges violation of virtually all of the RICO predicates listed in § 1961(1). See Compl. ¶ 318. There, Plaintiff merely lists the offenses and provides no factual allegations that would establish the elements of any of them. Reading the Complaint in its totality, only the RICO predicates of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, are mentioned in the factual allegations of the Complaint. Such pleading is clearly insufficient.

With respect to mail and wire fraud, Plaintiff alleges in conclusory fashion that Mr. Crane and Mr. Van Aulen committed mail and wire fraud by introducing false evidence and testimony during the custody proceedings and tampering with evidence mailed to Plaintiff. Id. ¶¶ 109, 115,

---

[13] In any event, Plaintiff simply claims a loss of wages without providing any factual detail that would establish that injury. Accordingly, her allegations are inadequate on those grounds, as well.

117-118, 130.  As an initial matter, a person can only commit wire fraud where he or she uses "wire, radio or television communication" with the intent to defraud.  18 U.S.C. § 1343.  Plaintiff alleges only use of the mail; thus, the Complaint fails to allege wire fraud.  In addition, RICO predicates sounding in fraud, such as mail and wire fraud, must be pled with particularity in accordance with Federal Rule of Civil Procedure 9(b).  Silverstein v. Percudani, 207 F. App'x 238, 239 (3d Cir. 2006).  This requirement is satisfied in one of two ways: (1) by pleading the "date, place or time" of the alleged fraud; or (2) through use of other means that serve to "inject[] precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations and citations omitted).  Moreover, Rule 9(b) also requires a plaintiff to "allege who made a misrepresentation to whom and the general content of the misrepresentation."  Id.  Plaintiff's allegations fail to meet this standard.  Plaintiff never identifies the content of the alleged misrepresentations, when they were made, or where they were made.  Accordingly, the Complaint fails to allege the "racketeering activity" element of a § 1962(c) claim.[14]

Because Plaintiff fails to establish either standing to bring a RICO claim or the underlying racketeering activity required to state a § 1962(c) claim, the Court is satisfied that Count Two must be dismissed in its entirety.

---

[14] Because Plaintiff fails to establish the requisite racketeering activity, she also necessarily fails to establish a pattern of such activity.  Thus, that element fails, as well.  Finally, Plaintiff fails to establish the existence of an enterprise.  In order to plead an association-in-fact enterprise, a plaintiff must plead, at a minimum, the following three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009); see also In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 369-70 (3d Cir. 2010).  Plaintiff fails to establish relationships between Defendants.  Instead, Plaintiff merely introduces various Defendants and identifies actions that they individually took, but she does not provide any factual detail as to how all of the Defendants are related to one another.  The RICO claim therefore fails to establish the "enterprise" element.

**J.   Counts Six Through Twelve: State Law Claims**

   **1.   Count Six: Legal Malpractice**

Plaintiff alleges legal malpractice against Ms. Stremler and Messrs. Van Aulen and Radol. Under New Jersey law, a legal malpractice claim consists of the following elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001).

Here, Plaintiff has no claim for legal malpractice against Mr. Van Aulen because he served as Mr. Crane's attorney, not Plaintiff's. Thus, there was never any attorney-client relationship between Plaintiff and Mr. Van Aulen. With respect to Ms. Stremler and Mr. Radol, Plaintiff adequately pleads an attorney-client relationship. Plaintiff alleges that Mr. Radol represented her from approximately February 2012 until the summer of 2012. Ms. Stremler allegedly represented Plaintiff around the time of the custody trial until Ms. Stremler withdrew from representation. Thus, the first element is satisfied.

Plaintiff fails, however, to plead adequately that Ms. Stremler and Mr. Radol breached their duty of care. As to Mr. Radol, Plaintiff claims that she dismissed him as her attorney "because he was not communicating with her, had misled her, [and] failed to follow through in negotiating a settlement." Compl. ¶ 142. Plaintiff provides no further detail as to the actions Mr. Radol took or failed to take. Plaintiff's allegations concerning Mr. Radol are not sufficiently specific to "state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570. Of course, the Court is not requiring Plaintiff to meticulously set forth every detail regarding Mr. Radol's conduct, but she must do more than merely claim that Mr. Radol misled her. See id. While facts might exist that imply a breach of duty, Plaintiff has not pled them. The same reasoning applies to Ms.

Stremler.  Plaintiff claims Ms. Stremler notified her that she would be seeking to withdraw as trial counsel and that Ms. Stremler failed to provide trial binders to Plaintiff.  See id. ¶¶ 163-67. Plaintiff does not identify the circumstances that led Ms. Stremler to withdraw, although it appears from the Complaint that Judge Escala and Judge Mizdol permitted Ms. Stremler to do so.  See id. ¶¶ 164-65.  As with many other Defendants, Plaintiff does not plead sufficient facts as to Ms. Stremler "to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678.

Moreover, even if Plaintiff had properly pled breach of duty, Plaintiff fails to plead that her damages were proximately caused by Mr. Radol or Ms. Stremler.  In order to establish proximate causation, the plaintiff must show that the "defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury."  Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 419 (1996)).  Here, the Complaint fails to provide any connection between the alleged conduct of Mr. Radol and Ms. Stremler and the alleged injuries visited upon Plaintiff—i.e., loss of custody of the children and the other damages flowing therefrom.  Therefore, Plaintiff fails to state a claim for legal malpractice, and Count Six is accordingly dismissed.

## 2.  Counts Seven Through Nine: Therapist and Social Worker Malpractice

In Count Seven, Plaintiff alleges professional malpractice against Lisa Estrin, Full Circle, and Kristin Cirelli.  Plaintiff acknowledges that Ms. Estrin was hired by Mr. Crane to provide therapy to D.C. and G.C.  Plaintiff does not allege any relationship with Ms. Estrin.  In the circumstances presented here, therefore, Plaintiff cannot have a claim for professional malpractice against Ms. Estrin.  See T.G. v. Kaplan, No. L-3605-08, 2011 WL 1004645, at *13-14 (N.J. App. Div. Mar. 23, 2011).  Plaintiff similarly fails to allege a relationship with either Full Circle or Kristin Cirelli.  Indeed, the Complaint alleges that Ms. Cirelli, an employee of Full Circle, provided

treatment to D.C. and G.C. in Mr. Crane's home.  See Compl. ¶¶ 63, 240.  Therefore, Count Seven must be dismissed in its entirety.

Count Eight alleges social worker malpractice against Dr. Greif.  As stated previously, Dr. Greif was hired by Mr. Crane.  Plaintiff has never had any relationship with Dr. Greif.  Thus, Plaintiff cannot state a claim for malpractice against her.

Count Nine for social worker malpractice must also be dismissed on the same basis. Plaintiff asserts that claim against the BFC, Constance Ritzler (a BFC employee), and John Cuttito (also a BFC employee).  Essentially, Plaintiff alleges that these defendants provided incomplete custody reports to the Bergen County Family Court by excluding evidence.  See Compl. ¶¶ 209, 291.  Plaintiff does not allege that she was a client of these defendants; instead, Plaintiff acknowledges that they were appointed by the Family Court to perform the custody evaluation. Id. ¶ 198.  Therefore, Plaintiff does not allege a relationship with the BFC, Ms. Ritzler, or Mr. Cuttito that would give rise to a professional malpractice claim, and Count Nine is accordingly dismissed.

Because Plaintiff fails to plead a relationship between herself and the various parties named in Counts Seven, Eight, and Nine, those claims must be dismissed.  Moreover, it appears that Plaintiff seeks to bring these claims on behalf of her children.  See Compl. ¶¶ 365, 373, 382.  As discussed above, Plaintiff may not represent her children as a pro se plaintiff.  Therefore, if Plaintiff wishes to replead these claims, she may only plead them on her own behalf.[15]

### 3.  Counts Ten and Eleven: Unjust Enrichment and Disgorge Fees

---

[15] Plaintiff also claims at various points in Counts Seven, Eight, and Nine that the defendants committed "vendor misfeasance and malfeasance."  These concepts are unknown in the law.

In Count Ten, Plaintiff alleges unjust enrichment against the defendants named in Counts Seven through Nine.   In order to state a claim for unjust enrichment, the plaintiff must allege that the defendant received a benefit at the plaintiff's expense "under circumstances that would make it unjust for defendant to retain the benefit without paying for it."  Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 723-24 (D.N.J. May 26, 2011) (internal quotations and citations omitted).  Unjust enrichment is not an independent tort cause of action; rather, it is generally used in the context of quasi-contractual liability.  Castro v. NYT Television, 370 N.J. Super. 282, 299 (App. Div. 2004). Plaintiff alleges that she and/or Mr. Crane paid Dr. Greif, the BFC, Ms. Ritzler, Mr. Cuttito, and Ms. Estrin.  Compl. ¶ 388.  Plaintiff does not specify which of these persons she actually paid and how much she paid them.  Even assuming Plaintiff did in fact make payments to these defendants, however, Plaintiff fails to allege "circumstances that would make it unjust for [them] to retain" the payments.  Snyder, 792 F. Supp. 2d at 723-24.  Rather, Plaintiff simply makes bare allegations of wrongful conduct and provides no factual support for her assertions.  Such pleading is insufficient, see Twombly, 550 U.S. at 570, and Count Ten must therefore be dismissed.

Count Eleven must also be dismissed to the extent that it purports to be a cause of action. In Count Eleven, Plaintiff requests the disgorgement of fees paid to Mr. Van Aulen, Dr. Greif, the BFC, and Ms. Estrin.  This is merely a remedy and not a cause of action.  Moreover, Plaintiff would not be entitled to a disgorgement of fees paid to Mr. Van Aulen, Dr. Greif, or Ms. Estrin, since there is no allegation that she ever made any payments to them.  Indeed, since all three of them were hired by Mr. Crane, it is likely that he paid them and not Plaintiff.  Counts Ten and Eleven are accordingly dismissed.

### 4.  Count Twelve: Declaratory and Injunctive Relief

In this Count, Plaintiff seeks a stay of the state court proceedings in light of the fact that she asserts claims under 42 U.S.C. § 1983. While the Anti-Injunction Act generally bars federal courts from enjoining ongoing state court proceedings, the Act permits such an injunction in three narrow circumstances: "where the injunction (1) is expressly authorized by Congress; (2) is necessary in aid of the federal court's jurisdiction; or (3) is necessary to protect or effectuate the federal court's judgment." 28 U.S.C. § 2283; U.S. Steel Corp. Plan for Emp. Ins. Benefits v. Musisko, 885 F.2d 1170, 1176 (3d Cir. 1989). Section 1983 expressly authorizes the issuance of federal injunctions. Mitchum v. Foster, 407 U.S. 225, 242-43 (1972). Thus, an injunction could theoretically issue in this case, but because Plaintiff fails to state a claim under § 1983, the Court declines Plaintiff's invitation to do so.[16] Count Twelve is therefore dismissed.

## IV.   CONCLUSION

In light of the foregoing, the motions to dismiss are **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE** as to the following Defendants: (1) the ACJC; (2) the Appellate Division; (3) the Bergen County Family Court; (4) the Office of Court Administration; (5) Judge Victor Ashrafi; (6) Judge Harry G. Carroll; (7) Judge William R. DeLorenzo; (8) Judge Peter Doyne; (9) Judge Gerald C. Escala; (10) Judge John C. Kennedy; (11) Judge Ellen L. Koblitz; (12) Judge Bonnie J. Mizdol; (13) Judge William E. Nugent; (14) Judge Jerome M. St. John; (15) Judge Joseph L. Yannotti; (16) Chief Justice Stuart Rabner; (17) Kathy Katona, Esq.; (18) Diana Moskal; (19) the AGBOE; and (20) DYFS.

The Defendants remaining in the case are as follows: (1) the Good Shepherd Lutheran Church, Roger W. Spencer, and Janet Tenore; (2) Luciana Coutinho, Marleni Coutinho, Plinio

---

[16] In addition, to the extent that the proceedings in Bergen County Family Court have concluded, there would not be any proceedings for the Court to enjoin.

Coutinho, and Edward J. Crane; (3) Peter Van Aulen, Esq.; (4) Roger Radol, Esq.; (5) Alexandra Stremler, Esq.; (6) Dr. Judith Brown Greif; (7) Lisa Estrin; (8) the Bergen Family Center, Constance Ritzler, and John Cuttito; (9) Dionos Burgos, Sandra Cruz, Erika Frank, Debbie Gomez, Tara Horne, Ivan Nina, and Patrick Yan; (10) Full Circle and Kristin Cirelli; (11) Governor Chris Christie; (12) Bank of America Merrill Lynch; and (13) the Office of the County Counsel (collectively, the "Remaining Defendants");

As to the Remaining Defendants, the Court rules as follows:

**(1)** Counts One, Three, and Five are dismissed **WITH PREJUDICE** as to: (a) the Good Shepherd Lutheran Church, Roger W. Spencer, and Janet Tenore; (b) Luciana Coutinho, Marleni Coutinho, Plinio Coutinho, and Edward J. Crane; (c) Peter Van Aulen, Esq.; (d) Roger Radol, Esq.; (e) Alexandra Stremler, Esq.; (f) Dr. Judith Brown Greif; and (g) Lisa Estrin and **WITHOUT PREJUDICE** as to (a) the Bergen Family Center, Constance Ritzler, and John Cuttito; (b) Dionos Burgos, Sandra Cruz, Erika Frank, Debbie Gomez, Tara Horne, Ivan Nina, and Patrick Yan; (c) Full Circle and Kristin Cirelli; (d) Governor Chris Christie; and (e) Bank of America Merrill Lynch; and (f) the Office of the County Counsel;

**(2)** Count Two is dismissed **WITHOUT PREJUDICE** as to all Remaining Defendants;

**(3)** Count Four is dismissed **WITHOUT PREJUDICE** as to the Office of the County Counsel and **WITH PREJUDICE** as to all other Remaining Defendants;

**(4)** Count Six, which is pled only against Mr. Van Aulen, Mr. Radol, and Ms. Stremler, is dismissed **WITH PREJUDICE** as to Mr. Van Aulen and **WITHOUT PREJUDICE** as to Mr. Radol and Ms. Stremler;

(**5**) Count Seven, which is pled only against Ms. Estrin, Full Circle, and Ms. Cirelli, is dismissed **WITHOUT PREJUDICE**;

(**6**) Count Eight, which is pled only against Dr. Greif, is dismissed **WITH PREJUDICE**;

(**7**) Count Nine, which is pled only against the Bergen Family Center, Ms. Ritzler, and Mr. Cuttito, is dismissed **WITHOUT PREJUDICE**;

(**8**) Count Ten, which is pled only against Dr. Greif, the Bergen Family Center, Ms. Ritzler, Mr. Cuttito, and Ms. Estrin, is dismissed **WITH PREJUDICE** as to Dr. Greif and **WITHOUT PREJUDICE** as to the Bergen Family Center, Ms. Ritzler, Mr. Cuttito, and Ms. Estrin;

(**9**) Count Eleven is dismissed **WITH PREJUDICE**; and

(**10**) Count Twelve is dismissed **WITHOUT PREJUDICE**.

Plaintiff is now on notice of the deficiencies in the Complaint.  Plaintiff may file an amended complaint that complies with Federal Rule of Civil Procedure 8(a) and is otherwise consistent with this Opinion no later than June 15, 2015.  Rule 8(a) requires that the pleading be "a short and plain statement … showing that the pleader is entitled to relief."  Thus, Plaintiff's amended complaint should not merely add allegations to the existing ones that have been deemed deficient. Plaintiff shall make specific, concise, and relevant allegations as to the Defendants who remain in the case.  Failure to file an amended complaint or to comply with this Opinion will result in dismissal of this case with prejudice.  An appropriate order will follow.

_s/ Madeline Cox Arleo_
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**